[Crim. No. 7621. Second Dist., Div. Four. Dec. 19, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. MARCOS SOTO MEDINA, Defendant and Appellant.

225

Bradford A. Arthur for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the district attorney of the County of Los Angeles, defendant was charged as follows: in count I with a violation of section 11502 of the Health and Safety Code in that on or about September 25, 1959, he did sell, furnish, administer and give to Roberta Rae Dubois, a minor of the age of 17 years, a narcotic, heroin, and in count II with a violation of section 11500 of such code in that on or about September 7, 1960, he had a narcotic, heroin, in his possession. The information further alleged that defendant had been previously convicted of a felony, to wit, violation of section 11500 of Health and Safety Code, possession of a narcotic. Defendant pleaded not guilty and denied the prior conviction. Trial was by the court, trial by jury having been duly waived and the cause, pursuant to stipulation of defendant and all counsel, was submitted to the court on the testimony contained in the transcript of the proceedings had at the preliminary hearing. Defendant did not testify. Defendant was found guilty as charged. The prior conviction was found to be true. Probation was denied and defendant was sentenced to state prison for the term prescribed by law. Sentences were ordered to run consecutively. Defendant prosecutes this appeal from the judgment as to his conviction on count I only and from the order denying his motion for a new trial, which motion and order is not reflected in the clerk's transcript.

Roberta Rae Dubois testified that she was born December 29, 1941. As she recalled, she had known the defendant for a couple of years prior to September 1959. She had dated him and they were well acquainted. Although she had smoked marijuana once or twice before September 1959 she had never used heroin. On an occasion during September 1959 she met with defendant at his sister's house in Sylmar, in the Los Angeles area. Defendant administered heroin to her there. Miss Dubois testified on this particular occasion defendant asked her if she wanted some ''junk'' or ''stuff.'' She said ''yes.'' Defendant had some white powder in a gelatin capsule. He emptied the powder from the capsule into a tablespoon, put water in, cooked it with matches, pulled it up into an eye dropper with some cotton, attached a hypodermic needle to the end and injected it into a vein of Miss Dubois' arm, having tied a belt around her arm so that the vein became prominent. Right afterwards, Miss Dubois' body began to tingle, her mouth became dry, she began to scratch and felt happy and pleasant. These sensations continued about

an hour. On subsequent occasions, commencing about a week later, Miss Dubois received similar injections from defendant and felt similar sensations. She testified she noticed the pupils of her eyes became small. After she stopped receiving injections, she would become sick, her bones would hurt, and she would yawn and feel nauseated.

John Olsen, a police officer for the City of Los Angeles, was an expert in narcotics and their uses and effect upon the human body. Having heard the testimony of Miss Dubois, he was of the opinion that the substance injected into her arm was heroin.

On September 7, 1960, Officer Karl Johnson of the San Fernando Police Department, together with Officers Olsen and Van Court of the Los Angeles Police Department, and Officer Phillips of the San Fernando Police Department, proceeded to the location of 1420 Kewen Street, San Fernando, staking out the area at about 9:50 p. m. A known narcotic addict entered the residence at about 10:05 p. m., had a conversation with the person at the front door, then left. The residence was that of a known narcotic addict (one Figueroa). Officer Johnson had received information of narcotic activity taking place there and had seen a number of known addicts go there over a period of a month.

About half an hour later that night of September 7, Officers Johnson and Van Court went to the front door of the residence and the other officers to the rear. Peering through the glass of the front door, Officers Johnson and Van Court observed Miss Dubois lying on a couch in the living room. She was recognized by them as being a narcotic addict and appeared to be under the influence of narcotics. One of the officers noted a discoloration on her left arm which, in his opinion, was caused by the injection of heroin. The two officers knocked on the door and identified themselves as police officers. Miss Dubois jumped up, screamed something and ran toward the rear of the house where a loud noise emanated, then the lights were extinguished. Thereupon, Officers Johnson and Van Court forced entry and went through the living room into the kitchen. Officer Johnson saw defendant in the doorway of the bathroom leading from the kitchen area. Officer Johnson took defendant into custody and asked him what he was doing. He said he was doing nothing. Officer Van Court picked up a finger stall containing 35 capsules of white powder, which was lying on the floor in a small closet space next to the bathroom, about three feet from where de-

fendant was standing. Defendant denied having seen it before. He admitted, however, that some narcotic paraphernalia (needle, spoon and other items) found in the bathroom was his and said that he had only been in the bathroom "fixing." The powder was later analyzed chemically and found to contain heroin.

Just before his fellow officers knocked on the front door, Officer Olsen observed defendant through the kitchen window at the rear of the house. Defendant appeared to be moving his hands in a slicing manner. When the knocking occurred and there was motion inside the house, defendant hurried over to a string attached to a light in the center of the kitchen, pulled it and then disappeared rapidly into the center portion of the house where the bathroom was located.

Miss Dubois testified she recalled having seen defendant putting heroin in capsules that night at the house in question before he was arrested.

Defendant contends that the testimony of the minor, Miss Dubois, against him had been influenced by bribery and coercion and therefore cannot stand. In this respect the record indicates that she had a conversation with the police officers the evening of her arrest. When first asked concerning this conversation she denied that the officers had told her if she would testify against defendant Medina they would do their best to see that no charges were brought against her. In a later question she indicated she did not understand the question and it was restated to her and she answered affirmatively to the question whether the officers had said that if she would state facts in a courtroom that charges against her would not be brought. She was then asked:

"Q. Which officer told you that? Do you remember his name? A. No.

"Q. Is he in the courtroom today? A. No, I don't remember. It was just a mutual thing.

"Q. What do you mean by a 'mutual thing?' A. Well, it was sort of my idea.

"Q. It was sort of your idea that if you testified against the defendant that charges against you would be dropped; is that what you mean? A. Yes.

"Q. In other words, then you told the officers that you would be happy to tell or state facts if a case or charges against you would not be brought; is that correct? A. Beg your pardon? I don't get that.

"Q. I will reframe the question. You told the officers it

was your idea that if they would drop charges against you, you would testify against Marcos Medina, the defendant; isn't that right? A. Yes.

"Q. You did that for the single purpose of avoiding having charges placed against you. Isn't that correct? A. Well, yes.

"Q. And that you were assured at the time that you made this offer, as I will call it, to police officers, you were assured by them, were you not, that charges would not be brought against you? A. No, I wan't [sic] assured of it.

"Q. Did they tell you that they would do their best that charges were not brought against you? A. Well, there seemed to be some doubt in their minds whether they wanted to do it or not.

"Q. Whether they wanted to do what or not? A. To let me go then.

"Q. But the following day you were let go, so to speak; were you not? A. Yes."

She further said that the next day she signed a written statement in the district attorney's office and she acknowledged that she was told at that time that charges against her were not going to be brought. She testified that the reason she had signed the statement was to make sure that no charges would be brought against her. She further stated that she was never promised immunity for testifying in any conversation with any member of the district attorney's office or the investigating officers and that everything to which she had testified to was the truth, and further that she was testifying freely and voluntarily. At the conclusion of her testimony the court stated, "I think she answered the questions very adequately that she was not promised any immunity, but she had hoped she would get some."

We believe that this conclusion was entirely proper after a review of the testimony and that any inducement extended her was basically to the effect that the authorities would endeavor to help her if she would testify to the truth, and that she was so motivated. Such inducement does not invalidate a witness' testimony.

In *People* v. *Lyons*, 50 Cal.2d 245, 265-266 [324 P.2d 556], the prosecutor frankly admitted to the jury that inducements had been offered the accomplices for their testimony against the defendant. The court commented (pp. 265-266):

". . . The 'inducements' obviously were promises of reduced sentences. These facts go to the credibility, not the

competency, of the accomplices' testimony. [Citing case.] They furnish the defendant with a powerful weapon for attacking the credibility of the inherently suspect witnesses but since the jury were fully apprised of the facts and section 1111 of the Penal Code was satisfied, we cannot hold that the trial is shown to have been unfair in fact or in law.

"Defendant, however, urges that since the proffered leniency was obviously conditioned on the accomplices' first testifying against defendant, that testimony was worthless as a matter of law, relying primarily on *People* v. *Green* (1951), 102 Cal.App.2d 831 [228 P.2d 867], and cases therein discussed. But in that case the promise of immunity was conditioned on the accomplice's testimony resulting in the conviction of the defendant. The *Green* case recognizes, at page 838 of 102 Cal.App.2d, that, 'It is a practice which seems to be approved in all jurisdictions, if the ends of justice will be thereby served, to extend immunity to one jointly charged with crime, upon condition that he testify fully and fairly as to his knoweldge of the facts out of which the charge arose.' There is nothing in the present case to indicate that the promises of leniency were conditioned on anything other than the accomplices testifying fully and fairly as to their knowledge of the facts out of which the charges arose. It follows that the accomplices' testimony was not so inherently incredible as to result in incompetency." (See, also, *People* v. *Robinson,* 184 Cal.App.2d 69, 78-79 [7 Cal.Rptr. 202]; *People* v. *Murphy,* 173 Cal.App.2d 367, 379 [343 P.2d 273].)

 Defendant further contends conviction cannot be had upon the testimony of Miss Dubois unless, as required by Penal Code section 1111, it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. The above-numbered section defines an accomplice as one "who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

 It appears that the test is that to be an accomplice a person must have testified against defendant and must herself be liable to prosecution for the identical offense charged against defendant on the trial in which such testimony is given.

As stated in *People* v. *Poindexter,* 51 Cal.2d 142, 149 [330 P.2d 763] : "To be an 'accomplice' within the meaning of the cited section, one 'must stand in the same relation to the crime as the person charged therewith and must approach it

from the same direction.' . . . In the prosecution for such offenses, the minors are regarded as victims rather than as accomplices, and the testimony of the minors therefore does not require corroboration.''

Miss Dubois was a minor to whom defendant unlawfully furnished, gave and administered the narcotic, to wit, heroin. She could not have been an accomplice of defendant in the violation charged in count I as she did not administer narcotics to a minor. Since she was not an accomplice of defendant in the underlying offense charged in count I, we hold, as was done in *People* v. *Poindexter, supra,* 51 Cal.2d 142, 149, that she could not be held to be an accomplice of the defendant upon the other charge, which in the case before us was the charge of possession of heroin.

 Defendant next contends that the uncorroborated testimony of the minor victim is not sufficient to sustain the conviction and judgment. With this contention, we cannot agree.

A qualified expert witness stated, after hearing the testimony of the minor concerning the physical effects upon her of the substance administered to her by defendant that in his opinion the substance administered was heroin. The testimony produced and heard by the trier of fact was sufficient to sustain the conviction. (*People* v. *Rios,* 127 Cal.App.2d 620, 622 [274 P.2d 163].)

The order denying the motion for a new trial and the judgment of conviction appealed from are affirmed.

Burke, P. J., and Balthis, J., concurred.