THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ANDRÉS MÁRQUEZ ESTRADA, Defendant and Appellant.

No. CR-66-10.      Decided December 15, 1966.

Raúl A. Feliciano for appellant. J. B. Fernández Badillo, Solicitor General, and Lolita Miranda de Escudero, Assistant Solicitor General, for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant was driving a motor vehicle through a thoroughfare of this Capital. He failed to stop at an intersection where the red light indicated he should stop. He had a collision with another vehicle. "He tried to keep going but the inside tire had blown out and was stuck in the fence, so he opened the door and crawled under the fence." A patrol

police observed what happened, got out of his car and chased him. Upon overtaking him he asked for his license and appellant showed him an overdue ticket. Appellant assumed an aggresssive attitude. The policeman searched him and found a smoked cap, a dropper and a hypodermic needle in one of his pockets. The policeman took appellant to the police station and there he handed to a chemist the objects seized. The chemist testified that "there was a residue in the inside of the metal cap . . . some crystals supposed to be of drugs . . . they stuck to the bottom of the cap. I scraped them." He explained that what he found after scraping with a small spatula was "a minimum amount", fifty micrograms which fit on a pinhead. He stated also that the dropper was washed with distilled water and no trace of drug was found either in it or in the hypodermic needle.

The defendant did not introduce any evidence. Convicted, he appealed.

When charging the jury the judge stated:

"It is prohibited in Puerto Rico for a person to have in his possession the narcotic drug known as heroin no matter the quantity of this drug he possesses; no matter the form in which this drug is found."

Appellant challenges this interpretation. He maintains that "the illegal possession of narcotics punished by law should be an amount sufficient to be susceptible of being applied to the common use made of it."

Thus, the question to be decided in this appeal is whether the possession of such a minimum amount of the drug, evidently imperceptible to the naked eye, constitutes a violation of our statute.

Section 29 of the Narcotics Act, 24 L.P.R.A. § 974z(2) provides that "there is hereby absolutely forbidden the holding, possession, conveyance, use, application, prescription, manufacture, preparation, or any transfer or receipt, as well as the introduction, concealing, and transportation in Puerto

Rico of . . . the narcotic drug known as heroin, as well as any manufactured preparation or product thereof of whatever form and nature, containing *any quantity of this drug* . . . ." (Emphasis added.)

When considering the question raised, the courts where laws similar to ours govern have adopted contrary positions. Some hold that any quantity of the drug possessed violates the law. *Casias* v. *People*, 415 P.2d 344 (Colo. 1966) ; *Peachie* v. *State*, 100 A.2d 1 (Md. 1953) ; *State* v. *Dodd*, 137 N.W.2d 465 (Wis. 1965). Others conclude that in order to incur in the violation of the statute the quantity of narcotic drug seized is a controlling factor.[1] *People* v. *Leal*, 413 P.2d 665 (Calif. 1966) ; *People* v. *McCarthy*, 413 P.2d 671 (Calif. 1966) ; *State* v. *Moreno*, 374 P.2d 872 (Ariz. 1962) ; *Green* v. *State*, 292 S.W.2d 122 (Texas 1956) ; *Pelham* v. *State*, 298 S.W.2d 171 (Texas 1957).

The position maintained by the former is simple and does not require further consideration. As the law establishes that it constitutes a violation to possess "any quantity of this drug," there is no point in going beyond the clear and specific terms of the statute. Any quantity includes the least minimum quantity.

It is proper then to consider the decisions which have held that the quantity of drug seized is a factor to be considered. First, in the *Pelham* and *Green* cases the Court of Criminal Appeals of the State of Texas sustained that unless the drug seized is susceptible of being used for the purposes for which

---

[1] The State of New York has obviated that question by enacting the following:

"Any person who shall possess or have under his control, in violation of any section of article thirty-three of the public health law . . . (2) one-eighth ounce or more, containing one per centum or more of the respective alkaloids or salts of heroin, morphine, or cocaine . . . shall be punishable by imprisonment for an indeterminate term the minimum of which shall be not less than three years and the maximum of which shall be not more than ten years. In determining said weight, avoirdupois ounces shall be used for solids or semi-solids and fluid ounces for liquids."

it is normally used, it does not constitute the possession punishable by law.

In the *Moreno* case the Arizona Court stated:

"We believe the correct rule to be applied under a statute such as ours is that where the amount of a narcotic is so small as to require a chemical analysis to detect its presence, the quantity is sufficient if useable under the known practices of narcotic addicts. We hold that only in those cases where the amount is incapable of being put to any effective use will the evidence be insufficient to support a conviction."

Even though since 1936 the intermediate courts of appeals adopted conflicting positions on this question, it was not until this year that the Supreme Court of California stated its position in the *Leal* case, decided May 2, 1966. Upon passing on that case it considered the most important opinions delivered from *People* v. *Salas*, 61 P.2d 771 (1936) where an Intermediate Court of Appeals held that as the law prohibits the possession of any quantity, the quantity seized does not play any part in the commission of the offense, to *People* v. *Aguilar*, 35 Cal. Rptr. 516 (1963); *People* v. *Meléndez*, 37 Cal. Rptr. 126 (1964) and *People* v. *Sullivan*, 44 Cal. Rptr. 524 (1965) decided by other intermediate courts which adopt a different position.

After analyzing the most important decisions, both pro and con, of these intermediate courts, the Supreme Court of California established:

"We conclude that the statutory differentiation of the various crimes as well as the history of the cases culminating in *Sullivan* show that in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. Hence the possession of a minute crystalline residue of narcotic useless for either sale or consumption, as *Sullivan* points out, does not constitute sufficient evidence in itself to sustain a conviction."

We believe that the position held by the Supreme Court of California, Arizona and Texas is the most reasonable. If we take into consideration the fact that the possession and use of narcotic drugs (we have expressly excluded their sale) does not necessarily constitute a criminal act and the circumstance of the very severe penalty established, it is reasonable to require that in order to incur in the offense of possession the quantity seized should be of such nature that it could be used as a narcotic.

As we stated before, we have excluded the sale from the application of this rule because if a transaction of this kind is established, we have to presume that the quantity is susceptible of being used. As it is stated in the *Ballesteros* case, 413 P.2d 739 (Ariz. 1966):

"As a matter of law the intent necessary to establish the crime of possession is not present when the amount is so minute as to be incapable of being applied to any use, even though it might be identifiable as narcotics by chemical analysis. But where the crime charged is the sale of a narcotic drug, the required intent is established by the transfer of any amount when the accompanying circumstances indicate an intent to sell."

We do not believe that the fact that our legislation does not punish the possession of the instruments used for injecting the drug is a factor against the adoption of the rule. On the contrary we believe that after knowing of this decision the Legislature will determine at the proper moment if it is convenient to establish said offense.

The foregoing having been established, let us review the facts which brought about the information against appellant. A hypodermic needle, a dropper and a smoked cap were found on him. He was searched after fleeing the scene of the accident following a collision with the car he was driving. He had been accused previously for another violation of the traffic laws and had failed to show up in court the day he

was summoned. The ticket he showed the policeman was past due. The chemist testified that the cap contained a residue, some small crystals supposedly of drugs, a minimum quantity which would fit on a pinhead. He did not find any traces of drugs either in the dropper or the hypodermic needle. Although the possession of the articles which were seized on him—the hypodermic needle and the dropper— are usually used to inject the narcotics, in the case at bar there is no evidence that they had been used for such purpose. So the only thing that could connect the defendant with the offense he was charged with are the small crystals which appeared in the cap in a minimum quantity (they could fit on a pinhead) and which evidently could not be used as narcotics. The most this evidence could establish was that the bearer had possessed narcotics at some previous time. It is clear then that the rule we have adopted is applicable to these facts and that the reversal of the judgment is in order.