[Crim. No. 14627. Third Dist. Nov. 25, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM CARTER SPANN, Defendant and Appellant.

**COUNSEL**

Robert Valencia, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall and David De Alba, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BLEASE, J.**—Defendant was observed to be under the influence of a substance, determined to be Valium, while an inmate in the Butte County

jail. This evidence was used to prove that he "possessed" an unauthorized narcotic substance or drug in jail in violation of Penal Code section 4573.6. He was sentenced to state prison.[1] On appeal he contends that the presence of the proscribed substance in his system does not constitute possession and cannot circumstantially prove preingestion possession. We agree and will reverse the judgment.

FACTS

On October 7, 1984, defendant was an inmate of the Butte County jail. A correctional officer observed that his speech was slurred, he was unstable on his feet, and that his eyes were partially closed as though he were intoxicated. Defendant had been an inmate at the facility for some six months. Suspecting that defendant was under the influence of an illicit substance, the officer caused a blood sample to be drawn.

A forensic pathologist for the California Department of Justice testified that the blood sample contained quantities of diazepam and nordiazepam. Diazepam is a generic term for Valium and nordiazepam is created within the body when diazepam is metabolized. Valium may be taken orally or by injection. The pathologist opined that defendant had ingested Valium a few hours before the blood sample was drawn, basing the conclusion on the relative amounts of diazepam and nordiazepam present in the blood sample. The pathologist did not know how much diazepam had been ingested by defendant, although the amount in his blood was "several times" above the lower threshold of the drug's detection, which is .05 milligrams per liter.

The jail rules were introduced into evidence. They permit only those narcotic substances which are prescribed by a physician and administered by a nurse.

At the time of the alleged offense defendant was receiving two prescribed medications, Soma and lithium carbonate. Valium had not been prescribed for him. Shortly after the blood sample was drawn defendant became unruly, stating that his life was over at the age of 38. He was subdued with the use of handcuffs, Mace, and an injection of Vistaril.

This was the evidence upon which the judgment of conviction was predicated, giving rise to this appeal.

---

[1]The court imposed a prison sentence of two years, the midterm, for the substantive offense and a one-year enhancement for each of three prior prison terms (Pen. Code § 667.5, subd. (b)), a total of five years.

## DISCUSSION

At the time of the alleged offense Penal Code section 4573.6 provided: "Any person who knowingly has in his possession in any [jail], any narcotics or drugs in any manner, shape, form, dispenser or container [], without being authorized to so possess the same by the rules of the [jail] or by the specific authorization of the [person in charge], is guilty of a felony."[2] (Stats. 1970, ch. 848, § 3.)

At issue is the meaning of "possession" as used in that section.[3] The sole proof that defendant "possessed" Valium is that he was under its influence in jail and that the amount in his body was well above the level of scientific detection.

### A.

█ It was contended at trial that possession extends to the presence of the proscribed substance in the body after consumption. The Attorney General does not pursue this theory on appeal. He impliedly concedes, by reference to an opinion of his office, that after consumption the user no longer has dominion and control over the substance consumed and hence doesnot possess it. (See Violation of Penal Code Section 4573.6, 63 Ops.Cal.Atty.Gen. 282 (1980).) We agree for the obvious reason that a person is not in control of a substance that is en route through his digestive system. If support is needed for this unremarkable conclusion it is contained in the cases upon which the opinion of the Attorney General relies and allied authority.

*Evans* v. *State* (1931) 24 Ala.App. 196 [132 So. 601], a prohibition era case, held that whiskey was not "possessed" when it "is in the man" after consumption. (See also, e.g. *Nethercutt* v. *Commonwealth* (1931) 241 Ky. 47 [43 S.W.2d 330]; liquor in the stomach is not "possessed.") Similarly, *State* v. *Downes* (1977) 31 Or.App. 1183 [572 P.2d 1328, 1330], holds that phencyclidine (PCP) is not possessed by the user after it has been

---

[2]The statute provided in full: "Any person who knowingly has in his possession in any [place where prisoners or inmates are held in custody, including a jail], any narcotics or drugs in any manner, shape, form, dispenser or container, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming narcotics or drugs, or alcoholic beverage, without being authorized to so possess the same by the rules of the [custodial institution] or by the specific authorization of the [person in charge of the institution], is guilty of a felony." (*Ibid.*) The statute was amended in 1984 to substitute the term "controlled substances" for "narcotics." (Stats. 1984, ch. 1635, § 88.)

[3]The terms "shape, form, dispenser or container," by their grammatical placement and content, modify the terms "narcotics or drugs," and hence do not condition the meaning of "possession."

injected into his arm. (See also, e.g., *Franklin* v. *State* (1969) 8 Md.App. 134 [258 A.2d 767, accord, heroin; *State* v. *Flinchpaugh* (1983) 232 Kan. 831 [659 P.2d 208] accord, cocaine.) Other cases have consistently held that taking a drink, i.e. using alcohol, was lawful when possession was unlawful. (See e.g., *Sizemore* v. *Commonwealth* (1924) 202 Ky. 273 [259 S.W. 337]; *Colbaugh* v. *United States* (8th Cir. 1926) 15 F.2d 929.)

These cases distinguish between the use of a proscribed substance, by its ingestion, consumption or injection for the purpose of its effect upon the body (or the condition of being under its influence), and its possession. Similarly, under California law, the proscription of the unprescribed use (or being under the influence) of a controlled substance (Health & Saf. Code, § 11550)[4] implicates the physiological processes of the body leading to addiction. (See *People* v. *Davis* (1966) 240 Cal.App.2d 496, 501 [49 Cal.Rptr. 663]; *People* v. *Velasquez* (1976) 54 Cal.App.3d 695, 699-700 [126 Cal.Rptr. 656].)[5] Possession does not.[6]

### B.

These distinctions are deeply embedded in the California criminal law. "Scarcely a legislature since 1872, when California passed its first law concerning the administration of narcotics to commit a felony, has failed to adopt some law dealing with the problem." (See e.g. *The Narcotic Problem* (1954) 1 UCLA L.Rev. 405, 502, fn. omitted.) The law was codified, in 1939, with the enactment of the Health and Safety Code. (Stats. 1939, ch. 1079, p. 3003.) The transportation, distribution, or selling of "narcotics," as defined by former section 11001, was made punishable as a felony or misdemeanor in the discretion of the court. (Former §§ 11160, 11713.) The "use" of "narcotics" was not addressed except for use amounting to addiction, for which the addict could be jailed. (Former §§ 11720-11722.) In 1940 "possession" was added to the list of proscribed acts under former section 11160. (Stats. 1940, First Ex. Sess., ch. 9, p. 18.) In 1945 the "use" of "narcotics" was made a misdemeanor. (Stats. 1949, ch. 1475, § 25, p. 2571; § 11721.)

---

[4]Unless otherwise noted, all further statutory references are to the Health and Safety Code.

[5]Both the use and being under the influence of a proscribed substance are treated alike by Health and Safety Code section 11550. The reason is that "[t]he object of the statute is to proscribe a use of narcotics that is an activating part of the process of addiction whatever may be the stage of that process at the time of their use. The provision making it an offense to be under the influence of narcotics must be construed in light of this object." (See *People* v. *Davis, supra,* 240 Cal.App.2d at p. 501 [concerning the predecessor § 11721].)

[6]Given these distinctions, the secretion of a controlled substance in the body, as in the anus, for the purpose of its concealment, constitutes possession.

In 1949, the section with which we are concerned, Penal Code section 4573.6, was enacted to make the "possession" of "narcotics or drugs" in a custodial institution, without the authorization of custodial authorities, a felony. (Stats. 1949, ch. 833, § 3, p. 1583.) It was preceded, in 1941, by Penal Code section 4573, which made it a felony to bring into any custodial institution "any narcotic, the possession of which is prohibited by Division 10" of the Health and Safety Code, the law described above (Stats. 1941, ch. 1192, § 15, p. 2965), thus linking the law applying to custodial institutions to the nomenclature of the general criminal law of drugs.

In 1962, the offense of addiction (§ 11721) was held unconstitutional. (*Robinson* v. *California* (1962) 370 U.S. 660, 667 [8 L.Ed.2d 758, 762-763, 82 S.Ct. 1417].) The Legislature responded by repealing that law and by creating a misdemeanor offense for the use of or being under the influence of "narcotics" (Stats. 1963, ch. 913, § 1, p. 2162) in order to regulate the causes of addiction by constitutional means. (See *People* v. *Davis, supra,* 240 Cal.App.2d at p. 501.) In 1965 the Legislature created the new classification of "restricted dangerous drug[s]" (former § 11901), and made their "possession" without prescription a misdemeanor (former § 11910). (Stats. 1965, ch. 2030, p. 4603.) Their "use," however, was not made a crime.

In 1972 California repealed this law and replaced it with an amended version of the Uniform Controlled Substances Act. (Stats. 1972, ch. 1407.) The drugs included within the repealed provisions were relabeled "controlled substances"[7] and separately classified in five schedules. (*Ibid.*) The term "narcotic drug" (as defined in new § 11019) was employed to distinguish substances within the schedules for purposes of their criminal classification and punishment (§§ 11350, 11377, and 11550.). The "possession" of most schedule I and II substances was made a felony (§ 11350); the "possession" of most schedule III, IV, and V drugs was made an alternate felony or misdemeanor (§ 11377.) The act addressed, by separate chapter, the "Control of Users of Controlled Substances," and made the "use" of any "controlled substance" (or being under its influence) a misdemeanor. (§ 11550.)

In 1973 the Legislature removed certain substances from the felony provisions of section 11350 and transferred them to the alternate felony/misdemeanor provisions of section 11377. (Stats. 1973, ch. 1078, art. 1, p. 2171, ff.) At the same time, the unprescribed *use* of a substance listed

---

[7]The Legislature, somewhat belatedly in 1984, amended Penal Code section 4573.6 to change "narcotics" to "controlled substances," thus bringing it into conformity with this law. (See fn. 2, *ante.*)

in schedules III, IV or V was made a crime only if the substance "was a narcotic drug" as defined in section 11019. (§ 11550.) These revisions were accompanied by an urgency declaration that they were intended to cure inadvertent substantive changes made by the uniform act. (Stats. 1973, ch. 1079, § 30, p. 2188.)

In 1976, section 11057, the list of schedule IV substances, was amended to include Valium (diazepam). (Stats. 1976, ch. 1035, § 5.5, p. 4638.) By virtue of section 11377, this made the unprescribed "possession" of Valium a crime punishable alternately as a misdemeanor or felony. (§ 11377.) However, since Valium is not a "narcotic drug," as that term is used in section 11019, its unprescribed "use" is not a criminal offense under section 11550.

■ This history of the drug laws shows a consistently different classification and punishment of the use and possession of regulated substances, with use (or being under the influence) invariably treated as less culpable or not culpable at all. Given this differential treatment, it is obvious that the Legislature did not intend mere use to constitute possession. Nor, as we next show, may that result be achieved indirectly by transmuting the one into the other by circumstantial reasoning.

## C.

In *People* v. *Sullivan* (1965) 234 Cal.App.2d 562 [44 Cal.Rptr. 524], the defendant was convicted of possession of heroin (former § 11500) on the basis of evidence that he was under the influence of heroin when arrested and that he possessed a narcotic injection kit containing a small residue of heroin. On these facts it is clear that a circumstantial case, inferentially linking use to possession, had been made out, justifying affirmance on the basis of the substantial evidence rule. Nonetheless, in reversing the conviction, the court held that the quantity of heroin found (outside the body) was too miniscule to sustain a conviction and rejected the theory that "possession" could be predicated upon the fact that the defendant had *used* heroin. Justice Fleming, writing for a majority of the court, said: "Were we to accept evidence of recent past possession of narcotics as equivalent to proof of present possession of narcotics, then we could charge every addict who was currently hot with possession of a narcotic, since he must have had possession of the narcotic in the recent past in order to come under its influence. [¶] While, concededly, there is an element of gamesmanship in securing proof of unlawful possession of narcotics, the criminal law is engaged in a continuous process of drawing lines, and in the enforcement of offenses involving possession of narcotics fixed lines appear to be unavoidable. (*People* v. *Cruz* [1965] 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) [¶] To this end we believe

the Legislature has established helpful guidelines in distinguishing the crimes of possession of narcotics paraphernalia ([former] Health & Saf. Code, § 11555) and of being under the influence of narcotics ([former] Health & Saf. Code, § 11721), both misdemeanors, from the more serious crime of possessing the narcotic itself ([former] Health & Saf. Code, § 11500), a felony." (*People* v. *Sullivan, supra,* at p. 565.)

This passage rejects the theory that circumstantial reasoning from use to possession is permitted. This conclusion is also reflected in the rejection by the majority of the views advanced in the concurring opinion of Justice Herndon. He took issue with the majority opinion on the theory that evidence of use could circumstantially support a finding of antecedent possession. (See *Sullivan, supra,* 234 Cal.App.2d at pp. 565-571 (conc. opn. of Herndon, J.).)

The majority view of *Sullivan* has been adopted by the California Supreme Court. In *People* v. *Leal* (1966) 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665] the defendant was found guilty of possession of heroin upon evidence showing that he possessed a heroin injection kit and a spoon containing one-half grain of crystallized heroin; that when arrested the pupils of his eyes were dilated and that his arms showed scarring resembling hypodermic needle marks. (*Id.,* at p. 505.) As in *Sullivan,* this evidence clearly tended to circumstantially prove the antecedent possession of heroin. Nonetheless, the court, relying upon *Sullivan,* held that possession could only be shown by the presence outside of the physiological processes of the body of a usable quantity of the proscribed substance. "'This distinction is pertinent,'" said the court "'where the evidence shows that defendant was in possession of a narcotics kit and under the influence of narcotics; but does not support the charge that he knowingly possessed heroin.'" (*Id.,* at p. 510; quoting from *Sullivan,* 234 Cal.App.2d at p. 565.) Accordingly, *Leal* must be read as a rejection of the proposition that possession of a proscribed substance may be proved by its use.

This point is hardened in the companion case of *People* v. *McCarthy* (1966) 64 Cal.2d 513 [50 Cal.Rptr. 783, 413 P.2d 671]. In that case the defendant's injection kit included two pieces of cotton, one wet with traces of morphine. (*Id.,* at p. 514.) An examining physician testified that needle marks on the defendant's arm were "'from less than a day old to about two weeks old.'" (*Ibid.*) A majority of the court reversed the case and remanded it for the limited purposes set forth in *Leal.* Justice McComb dissented, incorporating by reference Justice Herndon's reasoning in *Sullivan* (See 46 Cal.Rptr. 805, 808.), which was relied upon by the superseded opinion of the Court of Appeal in the *Leal* case. (*Id.,* at p. 515 (dis. opn. of McComb, J.).)

■ What flows from these cases is that one crime cannot be made into another either directly, by admixing their elements, or indirectly by circumstantial reasoning. The ultimate fact of one offense cannot be used to prove the categorically different ultimate fact of another offense. The Legislature, by its separate categorization and punishment of the offenses, has necessarily concluded otherwise. The same principle compels the conclusion that conduct which the Legislature has categorically rejected as criminal, as exemplified in this case by the removal of Valium from section 11550, cannot be made into criminal conduct by employing it to circumstantially prove an element of a crime. To conclude otherwise would be to transmute one crime into another or to transmute wholly noncriminal conduct into criminal conduct, in short to engage in a form of legal alchemy.

## II.

These principles have direct application to this case. As previously shown, Penal Code section 4573.6, save for alcohol, uses terms which employ the definitions taken from the controlled substance laws. Accordingly, *"possession,"* as used in that section, does not mean "use" and mere evidence of use (or being under the influence) of a proscribed substance cannot circumstantially prove its *"possession."*

This conclusion is not altered by the fact that the unprescribed *use* of Valium is not proscribed by the controlled substance laws. Conduct which has categorically been rejected as criminal, may not be made into criminal conduct by employing it as circumstantial proof of the conduct that is a crime by the treatment of use as circumstantial proof of possession. This is the point not considered in *Russell* v. *Superior Court* (1970) 12 Cal.App.3d 1114 [91 Cal.Rptr. 255], upon which the Attorney General relies. In *Russell* the defendant inmate sought to overturn a denial of his Penal Code section 995 challenge to a section 4573.6 charge. It was shown at the preliminary examination that the defendant was an inmate of a custodial institution and was displaying symptoms of intoxication. A blood test showed the presence of barbituric acid. (*Id.,* at p. 1117.) On this record the court held that the magistrate could logically infer the antecedent possession of the substance and hence there was probable cause the offense had been committed. The court noted the potential criterial problem arising out of this relationship between the noncriminal activity of "use" and the crime of "possession" but asserted that the difficulty, if any, arises solely where there is a conflict between a general and special statute making criminal the same conduct. (*Id.,* at pp. 1118-1119.)

This distinction, however, produces the result that possession of a controlled substance may not be proven by its criminal use but may be proven

by its noncriminal use. That stands the law on its head. The noncriminal use of a controlled substance in an institution may not be so bootstrapped into the crime of possession. We therefore reject the holding and reasoning in *Russell*.

The People have failed to adduce substantial evidence that the defendant violated Penal Code section 4573.6.

Accordingly, the judgment is reversed.

Puglia, P. J., and Sims, J., concurred.