**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Robert DIETZ, Defendant and Appellant.**

**No. 11950.**

Supreme Court of South Dakota.

April 6, 1978.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Keith R. Strange of Strange, Breit & Strange, Sioux Falls, for defendant and appellant.

ZASTROW, Justice.

The defendant was charged with third degree burglary of the Hurley Municipal Bar (Bar) on March 23, 1975. At his trial in Turner County, the jury returned a guilty verdict and the defendant was sentenced to six years in the state penitentiary. The defendant appeals from the judgment and conviction and questions the sufficiency of the evidence to support the verdict.*

The evidence introduced by the state was clearly circumstantial. In determining the sufficiency of evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt. *State v. Shank*, 1975, S.D., 226 N.W.2d 384, 387. In making that determination, "this court will accept 'that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict.'" *State v. Best*, 1975, S.D., 232 N.W.2d 447, 457. Although the rule at the trial level requires that the jury find the circumstantial evidence be

---

* The defendant also argues that error was committed during the testimony by the sheriff when some mention of arrest warrants for other crimes was made. There was no objection made at the trial and the testimony was not assigned as error. Such error, if any, is deemed waived by the failure to object and lack of a specific assignment of error.

conclusively inconsistent with any reasonable hypothesis of innocence, *State v. Best,* supra, the rule at the appellate level is that a guilty verdict will not be set aside if the evidence, including the circumstantial evidence and reasonable inferences, sustains a rational theory of guilt. *State v. Luna,* 1978, S.D., 264 N.W.2d 485 (handed down March 29, 1978). With these appellate rules in mind, we will review the state's evidence.

On the night of March 23, 1975, a snowstorm preceded by rain struck the small rural community of Hurley. The traffic in the town had virtually stopped by 11 p. m., as the streets were covered by snow and ice. About 11:30 p. m., the Hurley mayor and police chief were alerted by a silent alarm, indicating that the back door of the Bar had been opened. The mayor arrived at the back of the Bar some seven or eight minutes after the alarm had occurred. He observed two sets of footprints leading to the back door and that the door had been forcibly pried open. On entering the Bar, he saw a duffel bag containing a sledge hammer, some small tools, six cartons of cigarettes and $189 in currency and change. The bag and the tools did not belong to the Bar; the cigarettes and money did.

Entering the front portion of the Bar, the mayor observed that the glass front door had been broken, and he observed two sets of footprints in the fresh snow leading from the front door across the main street and into an alley. The police chief arrived at the Bar, did some preliminary investigation and then returned to his home to secure the police car which contained a two-way radio. As he returned to the Bar, the police chief observed a fresh set of tire tracks on the main street about one and one-half blocks east of the Bar. These tracks had not been on the street when the police chief had initially driven to the Bar only minutes before.

Upon arriving at the Bar, the police chief followed the two sets of footprints for three blocks—first to the south, then to the west, then to the south again near the American Legion Club where they were obliterated by the drifting snow. The police chief then returned to the Bar, secured his vehicle and followed the fresh tire tracks to the south and then to the west, reaching their obvious point of origin about one block south of the American Legion Club. The police chief returned to where he had first observed the fresh tracks and followed them east toward the city limits until the tracks left the street and went into the ditch. In the ditch, he found the defendant's 1967 Cadillac.

About ten minutes before that time, Debbie Peterson had just arrived in Hurley, having returned from a friend's house, where she observed a Cadillac in the ditch and saw someone running away from it in a northerly direction. Later, upon learning of the burglary, she advised the police chief of her observations. The following morning, the mayor and deputy county sheriff discovered two sets of footprints on a gravel road about one-eighth of a mile north of the location of the Cadillac. Because the snowstorm had been preceded by rain, the footprints had turned to ice, were frozen to the road and remained preserved well into the next day. They followed the footprints for some four miles until the footprints ended near the Wylie Nelson home.

The Nelsons testified that they had been awakened at 2:45 a. m. by two young men who complained of having had "transmission trouble" with their Cadillac. These men advised the Nelsons that they had been returning from Yankton on Highway 19. One of the young men made a telephone call, and the Nelsons allowed them to stay overnight at their home. Mrs. Nelson testified that one of the men had requested a bandage for his cut hand, indicating he had "[cut] it on a nail." (A subsequent investigation of the interior of the Cadillac revealed several blood stains on the front seat.)

The next morning, the young men declined Nelson's offer to pull their car and, instead, requested a ride to a farm near Worthing, South Dakota.

Both Mr. and Mrs. Nelson were able to identify the defendant from a photo array subsequently presented to them by the deputy sheriff.

The defendant contends that these are not the circumstances which are "inconsistent with any reasonable hypothesis of innocence" required for a conviction based upon circumstantial evidence. *State v. Shank,* supra. The trial court properly instructed the jury upon the elements of third degree burglary, the requirement that the state must prove the defendant's guilt beyond a reasonable doubt, and gave the circumstantial evidence instruction approved by this court in *State v. Shank,* supra. Based upon the evidence, the jury could well have inferred that two persons had approached the back door of the liquor store, had forced it open, had entered the liquor store, and had been in the process of placing money and cigarettes into a duffel bag which they had brought with them. They could further infer that the two persons abandoned their property and broke out through the glass front door when they heard the mayor's vehicle approach the back of the Bar. The jury could well have inferred that the two sets of footprints leading to a point to the south and west had been a trail which, if not obliterated, would have led to the parked car; that they then got into the parked car and proceeded down the street until they arrived on the main street, leaving fresh tire tracks in the snow which were observed by the police chief on his second trip to the Bar; that the defendant, in attempting to negotiate the wet and slippery streets in the middle of the blinding snowstorm, slid off the street and into the ditch where he or his companion were observed by witness Debbie Peterson.

The jury could also have easily inferred that the defendant and his companion, in an effort to avoid detection, struck out in a northerly direction leaving the footprints in the snow which led directly to the Nelson home; and, in order to avoid suspicion, the defendant and his companion fabricated an explanation to the Nelsons which was wholly inconsistent with the physical facts. The inference that the defendant's companion had cut his hand breaking the glass front door of the Bar could also be reached, based upon the blood found in the automobile and the request of Mrs. Nelson for a bandage.

The jury might also infer quite reasonably that defendant's and his companion's decision to walk some four miles in the middle of a blinding snowstorm rather than seek assistance at one of the residences in Hurley was also an effort to avoid detection.

The defendant makes much of the fact that the footprints leading from the front door of the Bar were not followed to the location of the starting point of the tire tracks. This was a question of fact and was stressed in the defendant's closing argument to the jury. The jury's verdict resolved that question against the defendant, and we do not find that one factor as being adequate to overcome the jury's verdict.

It was for the jury to weigh the evidence, and by its conclusion that the evidence was sufficient to find the defendant guilty beyond a reasonable doubt, it must have found that the facts were consistent with his guilt and inconsistent with any reasonable hypothesis of innocence. We have reviewed the record and are satisfied that the evidence produced by the state was sufficient to make out a prima facie case from which the jury could reasonably find the defendant guilty of the burglary of the Hurley Municipal Bar.

The judgment of the trial court is affirmed.

All the Justices concur.