**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Mack DICKSON and Larry Hardin, Defendants and Appellants.**

**Nos. 13682, 13683, 13733 and 13734.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 15, 1982.

Decided Feb. 9, 1983.

Steve Miller, Deputy State's Atty. Sioux Falls, for plaintiff and appellee; Mark V. Meierhenry Atty. Gen. Pierre, on brief.

Thomas K. Wilka of Burns, Hagen & Wilka, Sioux Falls, for defendant and appellant Dickson.

Richard Braithwaite, Sioux Falls, for defendant and appellant Hardin.

HENDERSON, Justice.

### PROCEDURAL HISTORY

Appellants were indicted on July 9, 1981, for grand theft, burglary in the third degree, and intentional damage to property in the first degree. Appellants pleaded not guilty at a September 1981 arraignment. A hearing on a motion in limine was had on October 15, 1981. A jury trial ensued from October 26–29, 1981. Appellants were found guilty of grand theft. The jury acquitted both appellants on the burglary charge and the trial court entered a judg-

ment of acquittal on the third count. Sentences were imposed on December 9, 1981, sentencing both appellants to the South Dakota State Penitentiary. Both then filed motions for judgments of acquittal and new trials. These motions were denied and appellants appeal from the jury verdict and post-trial motions. We affirm.

### FACTS

At approximately 3 a.m. on June 24, 1981, Gene Peska was awakened by a barking dog. Thereafter, from a window in his home, he witnessed three men loading objects into their car from a nearby ditch close to the Carlson Stapler Company in Sioux Falls, South Dakota. One of the men had curly, bushy hair. Mr. Peska discovered a cart and a sledgehammer belonging to the Stapler Company in this ditch. Law enforcement officers were summoned and discovered that extensive damage and a $6,300 theft had been inflicted upon and committed within the Stapler Company.

Concurrently, law enforcement officers were dispatched to 217 South Covell, another area of Sioux Falls, on a possible burglary. Residents of 217 South Covell consisted of Mr. Blakey, Miss Bridges, and their child. Mr. Blakey was the only black person living in the apartment complex. Upon the officers' arrival at approximately 3:30 a.m., Mr. Blakey and two other black men, appellant Dickson and appellant Hardin, were recognized as occupants in an automobile. The officers ascertained the call was unwarranted and departed.

After the officers departed, a neighbor, Mr. Quarve, observed three black males walking from the area of 217 South Covell carrying items to a nearby grove of trees and return empty handed. This occurred at approximately 4 a.m. Items belonging to the Stapler Company were later discovered in the trees by Mr. Quarve. Similarly, Stapler Company property was found and seized from the apartment at 217 South Covell pursuant to a search warrant.

Appellant Dickson testified and disavowed any participation in the Stapler Company theft. Appellant Hardin did not testify; however, he did have alibi witnesses testify that he was at home asleep on the couch until at least 3:30 a.m. on the morning in question.

Testimony during the trial disclosed that the three black males were together at midnight on the evening in question and also at 5 a.m. that morning.

The case was submitted to the jury and appellants were found guilty of grand theft. Appellants Hardin and Dickson were sentenced, respectively, to four and six years in the State Penitentiary. A motion for new trial was heard on February 25, 1982, and Tamra Bridges testified for the State in opposition to the new trial. Miss Bridges' testimony was to the effect that at 3 a.m. on June 24, 1981, appellants entered her apartment with the tools and box of items belonging to the Stapler Company. Appellants took the items into one of Miss Bridges' rooms and deposited them. Appellants were just leaving the apartment in the car when the police arrived. After the police departed, Miss Bridges asked appellants to remove the items from her apartment and appellants took the items and hid them by the trees behind her apartment.

Miss Bridges' testimony was inconsistent with an earlier statement she made. Miss Bridges claimed that her earlier statement was false because Mr. Blakey told her to either come up with a corroborating story for appellants or he would kill her. Her testimony was elicited in exchange for a suspended imposition of sentence on an indictment of grand theft by receiving stolen property.

### ISSUES

#### I.

APPELLANTS INSIST THAT THERE IS AN INSUFFICIENCY OF EVIDENCE TO SUSTAIN THEIR GRAND THEFT CONVICTIONS. WE DO NOT AGREE.

#### II.

WAS THE TRIAL COURT'S RULING, THAT APPELLANT HARDIN COULD

BE IMPEACHED WITH HIS 1974 ARI-
ZONA FELONY CONVICTION WITH-
OUT DISCLOSING THE NATURE OF
THE FELONY, REVERSIBLE ERROR?
THIS INVOLVED WEIGHING PROBA-
TIVE VALUE AGAINST PREJUDI-
CIAL EFFECT AND WE FIND NO
ABUSE OF DISCRETION.

## DECISION

### I.

Appellants assert that the jury verdict should be reversed. All parties agree on the applicable standard of review, which is set forth in *State v. Vogel,* 315 N.W.2d 321, 322 (S.D.1982):

> We recently stated the applicable scope of review on this issue in *State v. Robb,* 303 N.W.2d 368, 370–371 (S.D.1981):
>
>> In determining the sufficiency of evidence on appeal, the question is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Moeller,* [298 N.W.2d 93 (S.D.1980) ]; *State v. Dietz,* 264 N.W.2d 509 (S.D.1978).
>
> \*    \*    \*    \*    \*    \*
>
> Also, a verdict of guilty will not be set aside if the State's evidence, considering all favorable inferences drawn therefrom, supports a rational theory of guilt. *State v. Battest,* 295 N.W.2d 739 (S.D.1980); *State v. Dietz,* supra; *State v. Luna,* 264 N.W.2d 485 (S.D. 1978).

Appellee admits that its grand theft case is based largely on inferences derived from appellants' possession of recently stolen property. Such inferences have been approved in *State v. Larkin,* 87 S.D. 61, 67, 202 N.W.2d 862, 865–66 (1972).

■ Appellee acknowledges that its case consisted of circumstantial evidence. It is well accepted in South Dakota that a theft case based on an inference of possession may be established by circumstantial evidence so long as it is proven beyond a reasonable doubt. *State v. Winckler,* 260

N.W.2d 356, 366 (S.D.1977). Therefore, the cornerstone question is: what constitutes possession? In *State v. Alexander,* 286 N.W.2d 520, 523 (S.D.1979), we held, "Possession is defined as having control over a place or thing with knowledge of and the intent to have such control. The possession does not have to be actual, physical possession on one's person." We have also held that possession need not be exclusive, thus possession may be shared with others. *State v. Wellner,* 318 N.W.2d 324, 331 (S.D. 1982); *Larkin,* 87 S.D. at 67, 202 N.W.2d at 866.

Appellant Hardin in his brief admits that the jury could surmise that appellant Hardin entered 217 South Covell to remove the Stapler Company property and hide it in the grove of trees. However, both appellants contend that it was simply not possible for the jury to find beyond a reasonable doubt that appellants were in possession of stolen property. Regardless of appellants' argument, the evidence establishes that three males, at least one with bushy hair, loaded items in a car around 3 a.m. on June 24, 1981. Stolen property was discovered in the area that the car had been loaded. Approximately 30 to 40 minutes later, appellants and Mr. Blakey, all black men, were seen outside of 217 South Covell. Mr. Blakey was the only black resident of the apartment complex. Some 10 minutes after the officers departed, Mr. Quarve observed three black men hide stolen property in a grove of trees behind 217 South Covell. Additional stolen property was later discovered inside of 217 South Covell.

■ Weighing proof of possession is a matter within the province of the jury, and the nonexclusivity of possession is simply a factor that goes to the weight of the evidence. *Winckler,* 260 N.W.2d at 366. In the case at bar, instructions pertaining to the beyond a reasonable doubt standard were properly provided to the jury. Appellants' alibis were obviously unpersuasive to the jury. For a false alibi giving rise to a permissible inference of consciousness of guilt, *see State v. Neville,* 312 N.W.2d 723, 726 (S.D.1981).

■ Appellants contend, that because they were acquitted on burglary charges, the jury must have found beyond a reasonable doubt that appellants were not in the Stapler Company. The jury apparently did not split the evidence and may have reasonably doubted that all three men entered the building, while at the same time, believing that appellants participated in asportation of the property once outside. There is evidence in the record, when all favorable inferences are drawn therefrom, a rational theory of guilt could sufficiently be found by the jury beyond a reasonable doubt.

## II.

Appellant Hardin appeals the denial of his motion in limine to prohibit the State from using a prior felony conviction to impeach him if he testified at trial.

Foundationally, an accused's prior conviction of a crime to be admitted at trial for impeachment purposes, requires compliance with SDCL 19–14–12:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or the accused and the crime

(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or

(2) involved dishonesty or false statement, regardless of the punishment.

During the hearing, the trial judge indicated he would allow appellant Hardin's 1974 Arizona armed robbery conviction to be used as impeachment. Since the trial judge was aware of the prejudicial effect that knowledge of a prior armed robbery conviction could have on the jury, he decided to limit the State to relating only that the crime was a felony rather than revealing it was armed robbery.

Appellant Hardin decided not to testify based on the trial court's ruling. Now, appellant Hardin contends his rights were seriously impaired because he was precluded from testifying.

We addressed SDCL 19–14–12 in *State v. Quinn,* 286 N.W.2d 320 (S.D.1979), wherein we held that the trial court must first determine if the probative value of the prior conviction outweighs its prejudicial effect. We stated: "[W]e would caution trial courts to make a definite finding that the evidence is more probative than prejudicial before allowing prior convictions into evidence." 286 N.W.2d at 323. *See also, State v. Cochrun,* 328 N.W.2d 271 (S.D.1983). At the hearing below, the trial court made note of his requirement to weigh probative value against prejudicial effect. However, the trial court used the language "balance" rather than "weigh" to describe its analysis. Appellant Hardin contends the process used by the trial court was erroneous. We disagree.

■ The trial court expressly found that the prior conviction was of great probative value. Also, it was noted by the trial court that not all felonies would survive the analytical balancing required by SDCL 19–14–12. Obviously, the trial court knew what its duty was, and engaged in a balancing process based on that duty. Since SDCL 19–14–12 rulings are discretionary with the trial court, the standard of review is that an "abuse of discretion" is required for reversible error. *State v. Sahlie,* 90 S.D. 682, 245 N.W.2d 476 (1976). Even though the trial court's verbal recantation of its thought process was perhaps less than an ideal analysis, we do not find that its efforts at compliance equaled an abuse of discretion.

As to the merit of the trial court's "unspecified felony" approach, SDCL 19–14–12 does not explicitly prohibit nor condone such action. Prior to the adoption of SDCL 19–14–12, juries could hear the name and nature of a crime, but not specific details or incidents. *State v. Van Beek,* 87 S.D. 517, 520, 211 N.W.2d 355, 357 (1973); *State v. Olson,* 83 S.D. 260, 158 N.W.2d 526 (1968). However, in the pre-SDCL 19–14–12 era, determinations as to the relevance of prior convictions were made by the jury. Now, such determinations are for the trial court.

Instructive authority on this issue is found in *People v. Huff,* 101 Mich.App. 232, 246, 300 N.W.2d 525, 532 (1980), which holds:

> We agree with the trial judge that to have permitted the defendant to testify without the jury knowing he had been convicted of a felony would not have produced a fair trial in this case. So the trial judge sought a compromise. To avoid the effects held undesirable in [*People v. Baldwin,* 405 Mich. 550, 275 N.W.2d 253 (1979)], and yet to avoid misleading the jury regarding the true facts pertaining to defendant's reputation for truth and veracity, he permitted the prosecution to impeach by asking defendant if he had been convicted of a felony in 1975, but without specifying the felony.

On appeal, defendant argues that this was unfair because the jury may have speculated that he had been previously convicted of a much more serious and heinous crime, for example, criminal sexual conduct, first degree. He says then the jury might conjecture that he was a really bad person and find him guilty without regard to the truth of his denial. The answer to this argument is that if he, in fact, did fear that scenario he had the option to reveal to the jury that his previous conviction was for larceny in a building.

*See also, State v. Bucklin,* 304 N.W.2d 452, 453 (Iowa Ct.App.1981); *People v. Moseley,* 94 Mich.App. 461, 290 N.W.2d 39 (1979). Likewise, the trial court's ruling herein did not preclude appellant Hardin from taking the witness stand and disclosing that his prior conviction was for armed robbery.

Affirmed.

All the Justices concur.