**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Del EDMO, Defendant–Appellant.**

**No. 96–30215.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1998.

Decided April 9, 1998.

Edwin Wagner, Idaho Falls, Idaho, for defendant-appellant.

Betty H. Richardson, United States Attorney, Boise, Idaho, for plaintiff-appellee.

Before: ALARCON and HAWKINS, Circuit Judges, and BREWSTER,* District Judge.

* Honorable Rudi M. Brewster, United States District Judge for the Southern District of Califor-

ALARCON, Senior Circuit Judge:

Del Edmo ("Edmo") appeals from the denial of his motions to suppress the results of a urine test and an incriminating statement made after officers of the Fort Hall Police Department requested a urine sample. Edmo contends that, in requiring him to submit to a urine test, the police violated his Fourth Amendment right against unreasonable searches, his Fifth Amendment right against self-incrimination, and his Sixth Amendment right to counsel. He further argues that the district court erred in admitting a statement he made to the police after he requested the presence of counsel during any interrogation. We conclude that the police did not violate Edmo's constitutional rights by requiring him to provide a urine sample. We also hold that Edmo's statement was volunteered and not the product of police interrogation. Accordingly, we affirm the district court's denial of Edmo's motions to suppress the results of the urine test and his incriminating statement.

I

On June 19, 1995, the Fort Hall Police Department received a call regarding gunfire at the residence of Edmo's ex-wife. At the scene, police spoke with Tom Moss, Edmo's ex-father-in-law. Moss told the officers that he had been awakened by a loud noise. While investigating the source of the noise, he observed Edmo and several men at the back of the house. He also noticed that there were bullet holes in the door to the residence. In addition, he discovered that a window and tail light in his car were broken. A .22 caliber shell case was found outside the door of the house.

Five hours later, the police received a report that Edmo was observed driving erratically as though under the influence of some substance. He was arrested that same evening at 11:16 p.m. At the time of Edmo's arrest, the police found a marijuana pipe on the center console of his car and a .22 semiautomatic pistol in a compartment in the door on the driver's side.

The following morning, at approximately 10:30 a.m., Fort Hall Police Officer Robert Boone attempted to question Edmo. Edmo advised Officer Boone that he wanted an attorney present during questioning. Officer Boone immediately ceased questioning Edmo. At 11:20 a.m., Officer Boone returned and told Edmo that he would have to provide a urine sample. At first, Edmo refused. Edmo was advised by Officer Boone that he believed "that there was dissipating evidence in his [Edmo's] urine and due to exigent circumstances he would have to give the urine." Edmo agreed to give the sample but stated "the urine would probably not be clean" because he had been using cocaine and methamphetamine. Edmo's urine sample tested positive for marijuana.

On January 11, 1996, Edmo was indicted on one count of unlawfully possessing a firearm while using a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Trial was set for March 19, 1996. Edmo filed several pretrial motions. On April 12, 1996, the district court denied each motion. Edmo then entered a conditional plea of guilty, reserving the right to appeal the court's denial of his motions to suppress.

The district court sentenced Edmo to 15 months in prison with 3 years of supervised release and imposed a $3,000 fine.

II

Edmo first argues that, in compelling him to provide a urine sample, the police deprived him of his Fourth Amendment right to be free from unreasonable searches and seizures. He contends that the district court erred in concluding that the police were justified in requesting a urine sample without a search warrant under the Supreme Court's decision in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We review *de novo* the denial of a motion to suppress evidence obtained in violation of a defendant's constitutional rights. *See United States v. Sherwood*, 98 F.3d 402, 409 (9th Cir.1996).

In *Schmerber*, the Supreme Court held that a law enforcement officer may withdraw a blood sample from a person under arrest despite his or her refusal on the advice of counsel. *See Schmerber*, 384 U.S. at 770–

nia, sitting by designation.

71, 86 S.Ct. at 1835–36. A search incident to a warrantless arrest based upon probable cause is allowed where the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence'." *Id.* at 770, 86 S.Ct. at 1835 (quoting *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)). The Court determined that because the percentage of alcohol in the blood begins to diminish shortly after drinking stops, there was no time to seek out a magistrate and secure a warrant. *See id.* at 770–71, 86 S.Ct. at 1835–36. The Court also reasoned that the procedure used to extract the blood sample was a minor intrusion that is part of a commonplace examination that "involves virtually no risk, trauma or pain." *Id.* at 771, 86 S.Ct. at 1836.

█ We have not previously considered the question whether the rule in *Schmerber* permitting the withdrawal of blood without a search warrant to prevent the disappearance of evidence should be extended to a request for a urine sample. We are persuaded that requiring an arrestee to submit to a urine test is reasonable under the Fourth Amendment. It is a less intrusive search than the withdrawal of blood from the human body. It involves no risk of trauma or pain. Like alcohol in the blood system, traces of controlled substances in the urine will also disappear over time. In *Skinner v. Railway Labor Executives' Ass'n.,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the Court noted that "[a]lthough the metabolites of some drugs remain in the urine for longer periods of time ... the delay necessary to procure a warrant nevertheless may result in the destruction of valuable evidence." *Id.* at 623, 109 S.Ct. at 1416.

The Court instructed in *Schmerber* that the authority of the police to conduct a criminal warrantless search involving an intrusion into the body is limited:

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law

officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Id.* at 769–70, 86 S.Ct. at 1835–36.

In this matter, the police had probable cause to believe that Edmo had consumed a controlled substance. The police had received a report that he was outside the residence of his ex-wife immediately after shots had been fired into the house and at her father's car. The police also received a report that Edmo had been seen driving erratically. When he was detained, the arresting officer found a marijuana pipe in the vehicle. The totality of these circumstances provided a "clear indication" that he had been smoking marijuana. Thus, the request that Edmo provide a urine sample did not deprive him of his right to be free from unreasonable searches and seizures because it was administered to prevent the dissipation of necessary evidence.

### III

█ Edmo contends that being required to comply with Officer Boone's request for a urine sample violated his Fifth Amendment right against self-incrimination. We disagree.

█ The Fifth Amendment privilege against self-incrimination only protects the accused from being compelled to "provide the State with evidence of a testimonial or communicative nature." *Schmerber,* 384 U.S. at 761, 86 S.Ct. at 1830. In determining whether a blood-alcohol test violated this privilege, the Court in *Schmerber* held that "although an incriminating product of compulsion, [the blood-alcohol test evidence] was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, [thus] it was not inadmissible on privilege grounds." *Id.* at 765, 86 S.Ct. at 1833; *See also Lucero v. Gunter,* 17 F.3d 1347, 1350 (10th Cir.1994); *National Treasury Employees Union v. Von Raab,* 816 F.2d 170, 181 (5th Cir.1987), *aff'd in part vacated in part on other grounds,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). Being required to comply with Officer Boone's request for a urine sample did not

deprive Edmo of his Fifth Amendment privilege against self-incrimination.

## IV

■ Edmo also asserts that requiring an arrestee to submit to a urine sample deprives the arrestee of his or her Sixth Amendment right to counsel. We disagree.

The Supreme Court's decision in *Schmerber* again controls. In that case, Schmerber refused to consent to the withdrawal of his blood upon the advice of his counsel. *See Schmerber,* 384 U.S. at 759, 86 S.Ct. at 1829–30. In rejecting the contention that he received ineffective assistance of counsel the Court stated:

> Since petitioner was not entitled to assert the privilege [against self-incrimination], he has no greater right because counsel erroneously advised him that he could assert it. His claim is strictly limited to the failure of the police to respect his wish, reinforced by counsel's advice, to be left inviolate. No issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented. The limited claim thus made must be rejected.

*Id.* at 766, 86 S.Ct. at 1833.

■ Schmerber teaches us that there is no constitutional right to refuse to provide a urine sample even if advised to refuse to do so by an attorney. Here, Edmo did not have counsel at the time he was requested to furnish a urine sample. He had no Sixth Amendment right to counsel, however, until adversary proceedings had been initiated against him, *see Michigan v. Jackson,* 475 U.S. 625, 629, 106 S.Ct. 1404, 1407–08, 89 L.Ed.2d 631 (1986), except during a custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–31, 16 L.Ed.2d 694 (1966). As we explain below, Edmo was not subjected to an interrogation to elicit incriminating statements in violation of *Miranda.* Therefore, he had no right to seek the advice of counsel prior to furnishing a urine sample. Accordingly, we conclude that requiring Edmo to provide a urine sample without the presence of counsel did not violate his right under the Sixth Amendment.

## V

■ Edmo maintains that the district court erred in denying his motion to suppress his statement that the "urine would probably not be clean" because he had used cocaine and methamphetamine. He asserts that Officer Boone's statement that Edmo would have to give a urine sample because the officer stated he believed "that there was dissipating evidence in [Edmo's] urine" constituted an improper interrogation in violation of the *Miranda* doctrine. Edmo relies on the fact that he had earlier asserted his right to counsel.

■ In interpreting *Miranda* the Supreme Court has defined "interrogation" as "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). It includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689–90. Consistent with this inquiry, the Supreme Court held in *South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983), that "a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*" We cannot discern any substantive distinction between a request for a blood-alcohol test and a request for a urine sample. Neither request is reasonably likely to elicit an incriminating response.

■ Officer Boone explained the purpose of requiring a urine sample in response to Edmo's refusal to give one. When Edmo stated that it would "probably not be clean," he was not responding to any question or statement seeking an incriminating response. His statement was spontaneous and voluntary. Thus, it was admissible at trial. *See Innis,* 446 U.S. at 301–02, 100 S.Ct. at 1689–90 ("the police surely cannot be held accountable for the unforeseeable results of their words or actions"). We conclude that the

district court did not err in denying the motion to suppress Edmo's statement.

AFFIRMED.