1999 SD 9

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Pamela HANSON, Defendant and Appellant.**

**No. 20374.**

Supreme Court of South Dakota.

Argued Oct. 21, 1998.

Reassigned Nov. 25, 1998.

Decided Jan. 20, 1999.

Rehearing Denied Feb. 25, 1999.

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, for plaintiff and appellee.

Mary G. Keller, Huron, for defendant and appellant.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Hanson appeals her conviction for possession of marijuana claiming that 1) the police lacked probable cause to arrest her; 2) her constitutional rights were violated in obtaining a sample of her urine; and 3) there was insufficient evidence to support her conviction. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On February 21, 1997, at approximately 10:00 p.m., Huron police stopped a car driven by J.S., age 16, for violation of the tinted window law. Pamela Hanson (Hanson), age 42, was a passenger in the front seat and M.G., age 15, a passenger in the rear seat. J.S. and M.G. were friends of Hanson's son.

[¶ 3.] Officer Marotteck spoke with J.S. about the identity of the other occupants of the car. He learned that M.G. was 15 years old and in violation of the city's curfew law. Officer Marotteck leaned into the car to speak with M.G. and detected a faint odor of burnt marijuana.

[¶ 4.] Officer Marotteck spoke separately with all three passengers about where they

had been and what they had been doing. Hanson claimed to have been in the car only a short time in order to receive a ride from her home to the grocery store. The stories of the two juveniles conflicted. All three denied any knowledge regarding the odor of marijuana. None claimed there had ever been a fourth passenger.

[¶ 5.] A drug dog was brought to the scene and "hit" on the car, but not on any of the three passengers. Searches of the car revealed a partially burned marijuana leaf and seed on the rear seat and a pipe with burnt marijuana residue under the rear seat. All three passengers denied any knowledge of the marijuana and pipe.

[¶ 6.] Hanson and the two juveniles were arrested. Hanson was transported to the police department where a urine sample was obtained. According to the trial court, her consent was "not requested, nor obtained." The urine sample tested positive for marijuana.

[¶ 7.] Hanson was charged with one count of possession of less than one-half pound of marijuana in violation of SDCL 22–42–6 and one count of possession of a controlled substance, methamphetamine, in violation of SDCL 22–42–5. The methamphetamine charge was dismissed prior to trial.

[¶ 8.] Hanson's motion to suppress the urinalysis evidence was denied by the trial court. At a court trial held June 4, 1997, M.G. testified that the pipe belonged to him and no marijuana had been smoked in the car on the night in question. The trial court stated in its memorandum opinion dated November 20, 1997, that it did not find the juvenile's testimony to be credible and found Hanson guilty of possession of marijuana.

[¶ 9.] Hanson appeals raising the following issues:

1. Whether there was probable cause for Hanson's arrest.

2. Whether the seizure of Hanson's urine violated her constitutional rights.

3. Whether there was sufficient evidence to support Hanson's conviction.

## STANDARD OF REVIEW

[¶ 10.] Our standard of review is well established:

A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. *State v. Pfaff,* 456 N.W.2d 558 (S.D.1990). Similarly, a trial court's finding concerning probable cause for a warrantless arrest will not be overturned unless clearly erroneous. *U.S. v. Woolbright,* 831 F.2d 1390 (8thCir.1987); *U.S. v. McGlynn,* 671 F.2d 1140 (8thCir.1982). This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. *State v. Corder,* 460 N.W.2d 733 (S.D.1990). In making this determination, we review the evidence in a light most favorable to the trial court's decision. *Id.*

*State v. Baysinger,* 470 N.W.2d 840, 843 (S.D.1991).

## ANALYSIS AND DECISION

[¶ 11.] 1. Whether there was probable cause for Hanson's arrest.

[¶ 12.] Hanson argues that the police lacked probable cause to arrest her. She claims that her arrest was based solely on her presence in the car and her denial of any knowledge of the marijuana or pipe. We disagree.

[¶ 13.] "Probable cause to arrest exists where the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a belief by a man of reasonable caution that a suspect has committed or is committing an offense." *Baysinger,* 470 N.W.2d at 845 (citing *State v. Stuck,* 434 N.W.2d 43 (S.D.1988); *State v. Max,* 263 N.W.2d 685, 687 (S.D.1978)). "However, probable cause

deals with probabilities that are not technical but only the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *Baysinger,* 470 N.W.2d at 845 (citing *State v. Glick,* 87 S.D. 1, 201 N.W.2d 867 (1972)). "[W]e do not approach [the] facts separately ... 'but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances.'" *Baysinger,* 470 N.W.2d at 845–46 (alterations in original) (quoting *United States v. Green,* 525 F.2d 386, 390 (8thCir.1975) (citations omitted)).

[¶ 14.] The police had reason to stop the car because of its excessively tinted windows. *State v. Lownes,* 499 N.W.2d 896, 898–99 (S.D.1993) ("The probable cause required to make a stop is less than that required to issue a warrant or make an arrest.") (citing *Terry v. Ohio,* 392 U.S. 1, 25–27, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908–09 (1968); *State v. Anderson,* 359 N.W.2d 887, 889 (S.D.1984)). Once Officer Marotteck detected the odor of burnt marijuana and the drug dog "hit" on the car, there was probable cause for a warrantless search of the car. *Pfaff,* 456 N.W.2d at 561 (citing *State v. Peterson,* 407 N.W.2d 221, 223 (S.D.1987)). "Probable cause justifying a search is present where the facts found by the court or the magistrate would lead a reasonable and prudent person to believe it fairly probable that a crime had been committed and that evidence relevant to the crime would be uncovered by the search." *State v. Zachodni,* 466 N.W.2d 624, 629 (S.D.1991) (citations omitted). We have held that "when a law enforcement officer stops a vehicle, and the officer has probable cause to believe the vehicle contains contraband, the vehicle may be searched without a warrant." *Id.* at 627 (citations omitted). The search of the car produced the marijuana leaf and seed and the pipe with residue of burnt marijuana.

[¶ 15.] We recognize that probable cause must be particularized as to each party arrested. *Baysinger,* 470 N.W.2d at 846; *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person."). "A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to arrest that person." *Baysinger,* 470 N.W.2d at 846 (citation omitted).

[¶ 16.] In this case, however, there was more than mere proximity involved. All three occupants denied any knowledge of the marijuana and paraphernalia, but all had access to the rear seat of the small compact car. Possession requires that an individual be aware of the presence and character of the drug and intentionally and consciously possess such drug. *State v. Wellner,* 318 N.W.2d 324, 332 (S.D.1982) (citing *State v. Kietzke,* 85 S.D. 502, 506, 186 N.W.2d 551, 554 (1971)). "However, the possession need not be exclusive. It may ... [be] shared with others." *Id.* (quoting *Kietzke,* 85 S.D. at 506, 186 N.W.2d at 554).

[¶ 17.] Hanson has not shown that the trial court was clearly erroneous when it found probable cause to support her arrest and, therefore, we affirm this issue.

[¶ 18.] **2. Whether the seizure of Hanson's urine violated her constitutional rights.**

[¶ 19.] Hanson claims that the trial court should have suppressed the urinalysis results because the police violated her federal and state constitutional rights by obtaining a urine sample without her consent and without a warrant.

[¶ 20.] The Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution protect against unreasonable searches and seizures. "Because it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, ... these intrusions must be deemed searches under the

Fourth Amendment." *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639, 660 (1989).

#### [¶ 21.] a. Consent.

[¶ 22.] Generally a search of a person or place must be authorized by a warrant based on probable cause to believe that the search will produce contraband or other evidence of a crime. *Zachodni*, 466 N.W.2d at 627 (citations omitted). However, "[c]onsent given to law enforcement to conduct a search removes any necessity to obtain a warrant based on probable cause." *State v. Shearer*, 1996 SD 52, ¶ 11, 548 N.W.2d 792, 795 (citations omitted).

[¶ 23.] Hanson was simply told a sample would be taken. "The State bears the burden of proving that consent to a search has been freely and voluntarily given." *Zachodni*, 466 N.W.2d at 628 (citing *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983)). "The State's burden is not met 'by showing a mere submission to a claim of lawful authority.' " *Zachodni*, 466 N.W.2d at 628 (quoting *Royer*, 460 U.S. at 497, 103 S.Ct. at 1324, 75 L.Ed.2d at 236). The officer who obtained the sample testified at trial that he was "going to take a urine sample one way or the other."

[¶ 24.] Hanson was not advised of her rights before being required to produce the sample. In fact, she was only advised of her constitutional and statutory rights after the sample had been obtained. "While it is not necessary for the State to show that the consenting party knew of the right to refuse consent, such knowledge or lack of knowledge is one factor in the Court's judgment whether the State met its burden." *Zachodni*, 466 N.W.2d at 628 (citation omitted).

[¶ 25.] "The State must establish voluntariness by clear and convincing evidence that the search was the result of a free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied." *Zachodni*, 466 N.W.2d at 629 (quoting *State v. Cody*, 293 N.W.2d 440, 450 (S.D.1980) (citations omitted)). The trial court found that Hanson's consent was "not requested, nor obtained." Given the state's burden of proof and the facts of the case, we hold that the trial court was not clearly erroneous in finding Hanson did not consent to the taking of a urine sample.

#### [¶ 26.] b. Lawful search without consent.

[¶ 27.] While the State has unsuccessfully claimed Hanson consented to the sample, it also maintains in the alternative that the sample could have been obtained without her consent under *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). "[T]he absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right." *Breithaupt v. Abram*, 352 U.S. 432, 435–36, 77 S.Ct. 408, 410, 1 L.Ed.2d 448, 451 (1957).

[¶ 28.] We have previously adopted the analysis of *Schmerber* in the context of alcohol related offenses. *See State v. Nguyen*, 1997 SD 47, ¶ 10, 563 N.W.2d 120, 122–23 (1997); *State v. Tucker*, 533 N.W.2d 152, 154 (S.D.1995); *State v. Sickler*, 488 N.W.2d 70, 73 (S.D.1992); *State v. Lanier*, 452 N.W.2d 144, 145 (S.D.1990); *State v. Heinrich*, 449 N.W.2d 25, 26–27 (S.D.1989); *State v. Parker*, 444 N.W.2d 42, 43–44 (S.D.1989); *State v. Ager*, 416 N.W.2d 871, 874 (S.D.1987); *State v. Hartman*, 256 N.W.2d 131, 134 (S.D. 1977). We have stated:

> [B]odily substance samples [are] not subject to the exclusionary rule under the Fourth Amendment if they are taken (1) incident to a lawful arrest, (2) by a reliable and accepted method of obtaining such sample, (3) in a reasonable, medically approved manner, and (4) *where there is probable cause to believe that the evidence sought exists. It is also held that the elimination of alcohol by natural bodily functions presents exigent circumstances which obviate the necessity of obtaining a search warrant.*

*Tucker,* 533 N.W.2d at 154 (alterations in original) (emphasis added) (citing *Hartman,* 256 N.W.2d at 134 (citation omitted)).[1] Here the disputed issues which remain are: (1) whether there was probable cause to believe the evidence existed, (2) whether exigent circumstances existed and (3) whether procurement of the sample was reasonable considering the interests of the accused and society.

### [¶ 29.] (i) Probable cause.

[¶ 30.] "[T]he definition of 'probable cause' employed by the court is a question of law, not of fact or of discretion, and, as such, is fully reviewable de novo, with no 'presumption attach[ing] to the determination of the circuit court.'" *Zachodni,* 466 N.W.2d at 630 (second alteration in original) (quoting *State v. Byrd,* 398 N.W.2d 747, 749 (S.D. 1986)). *See also Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 296 (S.D.1982). We find that there was probable cause to test in this case.

[¶ 31.] The facts tell us that Hanson was in a car that smelled of burnt marijuana. A pipe with burned marijuana residue, a marijuana seed and a partially burned marijuana leaf were found in the car to which Hanson and the other occupants would have had access. A drug dog "hit" on the car. While the dog did not "hit" individually on Hanson, neither did the dog "hit" on the other two occupants excluding her to the inclusion of any other occupant of the car. All occupants denied possession of the marijuana, the pipe and knowing the source of the marijuana odor. All occupants told inconsistent stories to the officer who made the stop. One of the few consistencies at this time was that none of the occupants claimed any additional passengers had been in the vehicle to create a source of the marijuana and its odor.

[¶ 32.] Hanson claimed she was merely getting a ride to the grocery store. Yet the scene of the stop was not the most direct route from her home to the grocery store. The other two passengers indicated to law enforcement that Hanson had been in the car for twenty-five minutes to make a ten block trip to the grocery store. If the officers had no probable cause to search Hanson, then they had no probable cause to search the other two occupants of the car leaving the officers with a car containing marijuana and no occupant to hold accountable as the source of the illegal drug.

[¶ 33.] If the officers had probable cause to arrest Hanson for possession of marijuana, it would follow they had probable cause to test her for traces of the illegal substance for which she was arrested. Hanson has not shown the trial court's findings of fact concerning probable cause to be clearly erroneous. Based on the above facts the officers had probable cause to believe that Hanson had been possessing marijuana and to test her for the drug.

### [¶ 34.] (ii) Exigent circumstances.

[¶ 35.] Exigent circumstances exist when there is a situation that demands immediate attention and there is no time to get a warrant. *State v. Heumiller,* 317 N.W.2d 126, 129 (S.D.1982). While it is true that marijuana does not dissipate from a person's system as quickly as does alcohol, marijuana can be influenced by various factors, including the amount of water consumed prior to the urine test. The State's chemist testified that the sooner the urine sample is collected after marijuana consumption, the more likely a positive result will be obtained.[2] Based on the sample given by Hanson, the chemist testified that the high levels of THC present in her urine suggest consumption that day or the day before. It also allowed the chemist to rule out the possibility that the marijuana could have been the result of passive smoke or passive

---

1. Implied consent laws, SDCL 32–23–10 through 32–23–21, do not apply because Hanson was not the driver of the car.

2. The arrest occurred at 10:00 p.m. on February 21, 1997, a Friday night. Whether a magistrate or circuit judge could have been located that weekend prior to the commencement of business hours on Monday morning is unknown.

ingestion.[3]

[¶ 36.] In this case there is no basis for treating drug testing any different from blood-alcohol testing. *See State v. Strong,* 493 N.W.2d 834 (Iowa 1992) (cocaine); *State v. Thompson,* 244 Neb. 189, 505 N.W.2d 673 (1993) (cocaine). In both cases exigent circumstances existed and the difference is at most only in the matter of degree, not whether the circumstances exist or not. In upholding a forced urine test for drugs, the Court in *United States v. Edmo* reasoned:

> We are persuaded that requiring an arrestee to submit to a urine test is reasonable under the Fourth Amendment. It is a less intrusive search than the withdrawal of blood from the human body. It involves no risk of trauma or pain. Like alcohol in the blood system, traces of controlled substances in the urine will also disappear over time. In *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) the Court noted that '[a]lthough the metabolites of some drugs remain in the urine for longer periods of time ... the delay necessary to procure a warrant nevertheless may result in the destruction of valuable evidence.' *Id.* at 623, 109 S.Ct. at 1416.

140 F.3d 1289, 1292 (9thCir.1998). A similar holding can be found in *United States v. Twiss,* 127 F.3d 771 (8thCir.1997), *reh'g & suggestion for reh'g en banc denied.*

### [¶ 37.] (iii.) Balancing of interests of the accused and society.

[¶ 38.] We have held in issue one that there was probable cause to arrest Han-

son for possession of marijuana. As such, the officers had the right to search her in a medically reasonable manner based on exigent circumstances and as incident to that lawful arrest for the drug. The state must establish the procedure itself was reasonable when weighing the accused's interests in privacy and security against society's interest in the procedure in identifying the perpetrator of the crime. *Strong,* 493 N.W.2d at 837 (citing *Winston v. Lee,* 470 U.S., 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662, 669 (1985)).

[¶ 39.] The type of testing used in this case, submitting a urine sample, would seem to be more reasonable and less intrusive on a person's life than the alternative of attempting to secure a warrant. If a warrant were necessary, significant restraints would have to be placed upon the individual to preserve the chain of evidence while the law enforcement sought to locate a magistrate or circuit judge and obtain a warrant.

[¶ 40.] Urination into a specimen container is reasonable process. As a normal body function, urination is less intrusive than removal of blood by a syringe. *Edmo,* 140 F.3d at 1292. There is no threat to the safety or the health of the individual. *Winston,* 470 U.S. at 761, 105 S.Ct. at 1617, 84 L.Ed.2d at 669. Considered in the analysis is whether "all reasonable medical precautions were taken and no unusual or untested procedures were employed...." *Id.* Here no unusual or untested procedures were required.[4] We have already determined that the sample was not demanded by law enforcement at random but that there was probable cause to believe Hanson's body fluid

---

**3.** State Chemist Mathison testified that the results of the urine sample "demonstrates clearly that the person was actively smoking a large amount of marijuana."

Mathison went on to testify:
> With the drug we found in the urine sample, it's not possible to pinpoint when the smoking took place. But this is a very high level. The greatest probability would be that the smoking was very recent. Generally, you would expect that the smoking took place that day, although we cannot conclusive [sic] demonstrate that from a urine sample.

**4.** Should a defendant refuse to produce a specimen by urinating, other medical procedures

may be required. However, as instructed by *Schmerber,* "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." 384 U.S. at 768, 86 S.Ct. at 1834, 16 L.Ed.2d at 918. *See generally Thompson* for a summary of cases concerning the use of choke holds to extract substances from a defendant's mouth when he attempts to swallow evidence. 244 Neb. 189, 505 N.W.2d 673.

would test positive for drug consumption. *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919–20. The urine sample and its test results are highly accurate and essential to the community's interest in fairly and accurately determining the defendant's guilt or innocence especially · considering there were two other individuals in the car with similar access to the drugs found by the officers. *Strong*, 493 N.W.2d at 837–38 (citing *Winston*, 470 U.S. at 762, 105 S.Ct. at 1617–18, 84 L.Ed.2d at 670). Here this evidence was crucial to establish Hanson's possession of marijuana as against the other two occupants of the car. We affirm on issue two.

[¶ 41.] **3. Whether there was sufficient evidence to support Hanson's conviction.**

[¶ 42.] Hanson argues that a positive urine test for drugs by itself cannot constitute "possession" of marijuana in violation of SDCL 22–42–6. She cites to cases such as *State v. Lewis*, which held that "probative corroborating evidence" must be established by the state in addition to a positive drug test to support a conviction. 394 N.W.2d 212, 217 (Minn.App.1986).

[¶ 43.] We need not decide the issue of what if any further additional proof beyond the test result is required to establish possession in this case as she was not charged with possession of marijuana in her body but possession of the marijuana found in the car. The trial court sitting as the trier of fact made this clear in its memorandum opinion which it incorporated into its findings of fact and conclusions of law.[5] A verdict of guilty will not be overturned as long as the "evidence and the reasonable inferences

drawn therefrom sustain a rational theory of guilt." *State v. White*, 1996 SD 67, ¶ 24, 549 N.W.2d 676, 682 (citations omitted). Although this case is based on circumstantial evidence an inference of possession can be established by circumstantial evidence. *State v. Dickson*, 329 N.W.2d 630, 632 (S.D. 1983); *State v. Winckler*, 260 N.W.2d 356, 366 (S.D.1977).

> Possession is defined as having control over a place or thing with knowledge of and the intent to have such control. The possession does not have to be actual, physical possession on one's person. We have also held that possession need not be exclusive, thus possession may be shared with others.

*Dickson*, 329 N.W.2d at 632 (citations and internal quotations omitted). When one examines the facts previously set forth herein which led to the charge of possession against Hanson, there is sufficient evidence to support a verdict of guilty.

[¶ 44.] For the above reasons we affirm the trial court.

[¶ 45.] MILLER, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 46.] SABERS and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 47.] **THE SEIZURE OF HANSON'S URINE VIOLATED HER CONSTITUTIONAL RIGHTS.**

[¶ 48.] Law enforcement lacked probable cause for the search of Hanson's urine. The trial court should have suppressed the evidence because the seizure of her urine without her consent and without a warrant violat-

---

**5.** The trial court reasoned:

Defendant's argument is based upon the historic dichotomy between "possession" and "use" in the criminal law. *See U.S. v. Blackston*, 940 F.2d 877, 883–892 (3rdCir.1991) and particularly, *People v. Spann*, 187 Cal.App.3rd 400, 232 Cal.Rptr. 31 (3 Dist. 1986). Defendant argues that when there is a specific statute concerning ingestion, i.e. "use," a defendant cannot be convicted of a separate offense of "possession." This issue has not been addressed in South Dakota. In this instance there is no need for this Court to do so, because while there is circumstantial evidence of ingestion, there is also the evidence of the actual presence of marijuana in the form of a leaf, residue and a pipe.

ed her state and federal constitutional rights. Therefore, I dissent.

[¶ 49.] Although Officer Marotteck detected an odor of burnt marijuana within the car, there was no odor of marijuana about Hanson's person. The drug dog "hit" on the car, not on Hanson. The police observed nothing about her appearance which suggested she was under the influence of any drug. After considering the entire record and the lack of substantial evidence, the trial court was clearly erroneous in finding probable cause for forcing Hanson's urinalysis.

[¶ 50.] In addition, exigent circumstances which may eliminate the need of obtaining a warrant before taking the urine sample did not exist. *Schmerber v. California* specifically found exigent circumstances because of the speed at which alcohol dissipates from the body. 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). We have also recognized these exigent circumstances and have upheld warrantless taking of blood samples for detection of alcohol because of the speed at which alcohol dissipates from the body. *See State v. Tucker*, 533 N.W.2d 152, 154 (S.D.1995); *State v. Hartman*, 256 N.W.2d 131, 134 (S.D.1977).

[¶ 51.] Unlike alcohol, marijuana is not quickly dissipated by the body, thereby destroying possible evidence of a crime. According to the State's chemist, marijuana can be stored in an individual's fat tissue and detected as long as 32 days after ingestion. Literature suggests it may be detected up to as long as 77 days. The speed at which the body eliminates the presence of marijuana does not create exigent circumstances justifying warrantless urinalysis. The police had ample time to present information to a magistrate for a probable cause determination to attempt to obtain a warrant authorizing the taking of Hanson's urine sample.

[¶ 52.] The majority cites to *United States v. Twiss*, 127 F.3d 771 (8thCir.1997), *reh'g & suggestion for reh'g en banc denied* (1997) and *United States v. Edmo*, 140 F.3d 1289 (9thCir.1998) as support for the finding of exigent circumstances. However, reliance on those cases is misplaced.

[¶ 53.] *Twiss* is not controlling and can be distinguished from the facts of this case. Twiss was involved in a fatal one-car accident. Twiss and two other passengers left the scene of the accident and eventually went to the hospital where the police made contact. The fourth passenger's body was found pinned underneath the car with a beer still clutched in his hand. Marijuana was found at the scene of the accident. Police detected an odor of alcohol about Twiss' person and he appeared to be intoxicated. Police suspected the deceased occupant was not the driver and that Twiss might have been the one driving at the time of the accident. Based on all that information, the Eighth Circuit Court of Appeals found probable cause for the urinalysis. Therefore, the factual situation in *Twiss* is significantly different than this case and serves to emphasize the lack of probable cause here.

[¶ 54.] *Edmo* is also factually distinguishable and is not controlling. Edmo was observed driving erratically. The police found a marijuana pipe and .22 semi-automatic pistol in his car. Edmo consented to the urine sample, unlike Hanson. The Ninth Circuit Court of Appeals found that the police had probable cause to believe Edmo had consumed a controlled substance. However, I do not agree with the Ninth Circuit that obtaining a urine sample without a warrant is justified because of exigent circumstances.

[¶ 55.] Both *Edmo* and the majority minimize the degree of intrusion involved in obtaining a urine sample. The majority glosses over the intrusion by stating that "[t]he type of testing used in this case would seem to be more reasonable and less intrusive on a person's life than the alternative of attempting to secure a warrant." The majority ignores the logical extension of its reasoning. Although the police did not use physical force to obtain the sample of Hanson's urine, the officer who obtained the sample testified that he was "going to take a urine sample one way or the other." Had Hanson refused to comply with his order, forced catheterization would have been used to obtain the urine sample. The majority cannot argue that that

procedure would be "more reasonable and less intrusive ... than ... attempting to secure a warrant." Forced catheterization would be a substantial intrusion of the integrity of an individual's body. It goes well beyond the intrusion involved in obtaining a blood sample from a person suspected of driving under the influence of alcohol.

[¶ 56.] Under the position of the majority, a person in Hanson's situation would have no ability to refuse to provide a urine sample. At least an individual suspected of driving while under the influence of drugs or alcohol receives some protection from the implied consent laws. An individual can refuse to submit to a withdrawal and face the revocation of his or her driving privileges. Only under limited circumstances can the individual be forced to submit. However, because Hanson was not the driver of the vehicle, she does not receive the protection of the implied consent laws and, under the position of the majority, could not refuse to submit to the taking of her urine.

[¶ 57.] Obtaining a sample of urine from an individual without a warrant using force, if necessary, goes beyond the scope of a search incident to a lawful arrest. Law enforcement may obtain a sample of a bodily substance from an individual, such as a semen sample in a rape case, but such a substantial intrusion requires a warrant prior to the seizure. In this modern age of fax machines and cellular phones, it is difficult to believe law enforcement could not obtain a search warrant from a magistrate or circuit court judge within a few hours. The individual sought to be searched could be detained during that time.

[¶ 58.] At a minimum, the Fourth Amendment to the United States Constitution requires the existence of probable cause before law enforcement may require an individual to submit to an intrusion of his or her body. The United States Supreme Court in *Schmerber* rejected searches incident to arrest as justification for searches of bodily substances:

> Whatever the validity of these considerations in general, they have little applica-
tion with respect to searches involving intrusions beyond the body's surface. *The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained.* In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

384 U.S. at 769–70, 86 S.Ct. at 1835 (emphasis added).

[¶ 59.] The United States Supreme Court goes on to discuss the importance of a warrant, stating: "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.... The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id.* at 770, 86 S.Ct. at 1835. Although the *Schmerber* court found exigent circumstances based on the speed at which alcohol is eliminated from the body precluded the need for a warrant, it carefully limited its holding. It stated: "That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions *in no way indicates that it permits more substantial intrusions, or intrusions under other conditions*". *Id.* at 772, 86 S.Ct. at 1836 (emphasis added). We must heed that caution.

[¶ 60.] Evidence illegally obtained must be suppressed under the exclusionary rule. *State v. Shearer*, 1996 SD 52, ¶ 21, 548 N.W.2d 792, 796 (citing *State v. McCreary*, 82 S.D. 111, 125, 142 N.W.2d 240, 247 (1966) (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961))). "The rationale for this rule is to deter police from violating constitutional protections." *Shearer*, 1996 SD 52 at ¶ 21, 548 N.W.2d at 796 (citing *State v. Saiz*, 427 N.W.2d 825, 826 (S.D.1988)).

[¶ 61.] Here, the police only had probable cause to support an arrest for possession of the marijuana and paraphernalia found in the back seat of the vehicle. The police did not have probable cause to support an arrest for ingesting and, therefore, had no right to coerce Mrs. Hanson into providing a urine sample. Apparently, Hanson's counsel claims the floodgates have already been opened for police to illegally coerce urine samples in improper cases. We must try to close those floodgates before it is too late.

[¶ 62.] The trial court was clearly erroneous in denying Hanson's motion to suppress the urinalysis results.

[¶ 63.] **THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT HANSON'S CONVICTION WHEN THE IMPROPERLY ADMITTED URINE TEST RESULT IS DISREGARDED.**

[¶ 64.] "When an action is tried to the court, the presumption is that improperly admitted testimony is disregarded." *Matter of R.S.S.,* 474 N.W.2d 743, 750 (S.D.1991) (citations omitted). However, that presumption is not valid here. Hanson's conviction was based on circumstantial evidence, with a great deal of reliance placed on the results of her urine sample. The trial court refused to suppress the results of the urine sample and, therefore, considered it to be admissible evidence when making its verdict. It cannot be presumed that the improperly admitted results were disregarded by the trial court because they clearly were not.

[¶ 65.] We should reverse and remand for retrial.

[¶ 66.] AMUNDSON, Justice, joins this dissent.